## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RUTH JARRETT-COOPER, EXCLUSIVE
EVENTS & ACCOMODATIONS, L.L.C.,
BYRON TRICE, DELICIA JACKSON,
URBAN PLAYS LLC, and ANGELA
BARROW

      Plaintiffs,

                                        Case No. 11-13674

v.                                     Hon. Lawrence P. Zatkoff

UNITED AIR LINES, INC.,

      Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on February 1, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Plaintiffs' Motion to Remand [dkt 5] and Defendant's

Motion for Leave to Conduct Discovery Limited to the Issue of the Amount in Controversy [dkt 10].

The Motions have been fully briefed.  The Court finds that the facts and legal arguments are

adequately presented in the parties' papers, and the decision process would not be significantly aided

by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the

Motions be resolved on the briefs submitted.  For the reasons set forth below, Plaintiffs' Motion to

Remand is DENIED, and Defendant's Motion for Leave to Conduct Discovery is DENIED as moot.

## II.  BACKGROUND

A.  Factual Background

Plaintiff Exclusive Events & Accommodations, LLC ("Exclusive") is an entertainment tour support service that arranges travel accommodations for its various clients. Exclusive is owned and operated by Plaintiff Ruth Jarrett-Cooper ("Jarrett-Cooper"). Among Exclusive's clients are Plaintiff Katrina Taylor ("Taylor"), a recording artist, and members of her staff, Plaintiffs Byron Trice ("Trice") and Delicia Jackson ("Jackson").

Plaintiffs claim that on or about June 24, 2011, Exclusive booked flights for Taylor, Trice, and Jackson for travel accommodations in connection with Taylor's performances in Florida, Georgia, and Nevada. Plaintiffs claim that after a performance by Taylor in Las Vegas, she, Trice and Jackson sought to return to their respective homes before resuming Taylor's tour schedule. Plaintiffs contend that on or about June 24, 2011, Exclusive purchased tickets for Trice and Taylor to fly from Las Vegas to Atlanta on July 5, 2011 using Defendant United Airlines ("United"). Jarrett-Cooper's debit card was charged a total of $645.80 for these two tickets.

On June 24, 2011, Exclusive received an email confirmation from United, confirming Trice and Jackson's tickets. On June 28, 2011, United sent Exclusive an email titled "United Pre-Flight Notification." According to Plaintiffs, this email served as a reminder of the upcoming flight and provided various standard instructions regarding air travel.

Plaintiffs claim that Trice and Jackson timely arrived at the airport in Las Vegas on July 5, 2011. When attempting to check in, however, Plaintiffs claim that they were told that their tickets had been cancelled due to suspected credit card fraud.

Plaintiffs also claim a similar occurrence with respect to Plaintiff Angela Barrow ("Barrow"). Barrow is a playwright and executive producer of theatrical productions presented at venues throughout North America. She is also the owner and operator of Plaintiff Urban Plays, L.L.C. ("Urban"). Barrow and Urban are clients of Exclusive. Plaintiffs claim that in July of 2011, after

2

committing to perform one of her plays in Toronto, Ontario, Barrow contacted Exclusive requesting travel arrangements for all members of the stage production for August 11 and 12, 2011. On July 6, 2011, Exclusive booked flights for two actors in the play using United. The tickets were purchased using Urban's debit card, the numbers for which Exclusive had on file from similar, previous transactions. The cost of the two tickets totaled $1,174.26. Similar to the transaction with Trice and Jackson, Plaintiffs contend that Exclusive received email confirmation of the ticket purchases and forwarded the confirmation to Urban.

In early August, 2011, Urban advised Exclusive that the performance in Toronto would be rescheduled from August 12, 2011, to September 2, 2011. Urban requested that Exclusive change the previously made travel arrangements accordingly. According to Jarrett-Cooper, when she attempted to change the two tickets purchased from United, she was told that the tickets had been cancelled on August 7, 2011. Jarrett-Cooper claims that she was not told the reason for the cancellation because she was not the holder of the debit card with which the reservations were booked. Jarrett-Cooper further claims that she contacted Urban and discovered that it was not informed of the cancellations and, as of that date, was not refunded for the tickets.

Plaintiffs filed suit in Oakland County Circuit Court claiming damages as a result of United's alleged improper, unilateral, and undisclosed cancellation of the tickets booked for Trice, Jackson, and Urban. Plaintiffs also seek injunctive relief to prevent the alleged cancellations without cause or notice from continuing in the future. United's Answer acknowledges only that the tickets in question were cancelled due to suspected credit card fraud. United denies liability resulting from the events discussed above and asserts various affirmative defenses.

B. PROCEDURAL BACKGROUND

Plaintiffs' Complaint states that damages exceed $25,000—the jurisdictional amount

3

required in the State of Michigan circuit courts.  United removed the case to this Court based on diversity of citizenship.  The parties do not dispute that they are diverse.  Rather, Plaintiffs filed the instant Motion disputing that the amount-in-controversy exceeds $75,000.  Plaintiffs filed a declaration that each individual Plaintiff seeks damages amounting to less than $75,000.  Plaintiffs also filed an itemized statement of damages pursuant to E.D. Mich. L. R. 81.1.  The statement of damages set forth the following estimated damage amounts:

| | | |
|---|---|---|
| 1. | Barrow/Urban | $4,674.26 |
| 2. | Trice | $6,540.00 |
| 3. | Jackson | $5,500.00 |
| 4. | Exclusive/Jarrett-Cooper | $36645.80 |
| | Total | $53,360.06 |

Plaintiffs' Motion states that, because the total amount of damages falls well short of $75,000, the Court lacks diversity jurisdiction and this case should be remanded to the state court.

According to United's response, Plaintiffs' argument and damages estimate fail to account for the injunctive relief they seek.  If the value of the injunction is viewed from United's perspective, United asserts that the monetary cost of complying with the injunction satisfies the jurisdictional minimum.   In support of this argument, United submitted a declaration from Susan Mannette, a United ticket fraud investigator.  Mannette states that complying with the injunction Plaintiffs' seek would necessitate substantial changes in United's operations, costing an amount in excess of $75,000.

Plaintiffs dispute that the value of the injunction is to be viewed from United's perspective. According to Plaintiffs, the value of the injunction is viewed from Plaintiffs' perspective—namely, the value in being free from further undisclosed and unwarranted cancellations by United.

4

## III.  LEGAL STANDARD

A civil case filed in state court may be removed to federal court if it could have been brought in federal court originally.  *See* 28 U.S.C. § 1441(a).  A federal court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332. The Sixth Circuit has stated that:

> [a] defendant wishing to remove a case bears the burden of satisfying the amount-in-controversy requirement. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993).  Normally, "the sum claimed by the plaintiff[s] controls," *id*. at 156, but where plaintiffs seek "to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement," the defendant satisfies its burden when it proves that the amount in controversy "more likely than not" exceeds $75,000.  *Id*. at 158.  In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal.

*Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006).

Additionally, "In actions seeking . . .  injunctive relief, it is well established that the amount-in-controversy is measured by the value of the object of the litigation."  *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977).

## IV. ANALYSIS

A.    VALUING THE INJUNCTIVE RELIEF

The central issue before the Court is whether the jurisdictional amount has been satisfied. Although neither party disputes that the value of the injunctive relief sought is to be considered in the jurisdictional amount calculation, the parties disagree on how the injunctive relief is to be valued—whether the value should be based on the cost to United in complying with the injunction, or the value of the rights Plaintiffs seek to protect.

The Sixth Circuit has recently held that the "costs of complying with an injunction . . . may establish the amount-in-controversy."  *Cleveland Housing Renewal Project v. Deutsche Bank Trust*

*Co.*, 621 F.3d 554, 560 (6th Cir. 2010) (citing *Everett,* 460 F.3d at 829).  Therefore, United may

establish jurisdiction by showing that its compliance with an injunction in this case would "more

likely than not" satisfy the jurisdictional amount.  *Everett*, 460 F.3d at 822.  The Court turns next to

the relative significance of Plaintiffs' statements regarding their damages.

     B.     PLAINTIFFS' STATEMENTS REGARDING DAMAGES

In arguing against jurisdiction, Plaintiffs point to the fact that they have submitted

declarations to the Court stating that each Plaintiff's estimated damages fall short of $75,000.  Such

estimates, however, do not account for the value of the injunctive relief sought, which is

undoubtedly part of the amount-in-controversy calculation.  *See Wash. State Apple,* 432 U.S. at 347

("In actions seeking . . .  injunctive relief, it is well established that the amount-in-controversy is

measured by the value of the [injunctive relief].").  Moreover, the Sixth Circuit has held that:

> Because jurisdiction is determined as of the time of removal, events
> occurring after removal that reduce the amount in controversy do not
> oust jurisdiction.  Therefore, . . . we hold that a post-removal
> stipulation reducing the amount in controversy to below the
> jurisdictional limit does not require remand to state court.

*Rogers v. Wal-Mart Stores, Inc.,* 230 F.3d 868, 872 (6th Cir. 2000).  Thus, Plaintiffs' statements

regarding damages are not dispositive with respect to the Court's amount-in-controversy calculation.

     C.     COST OF COMPLIANCE

Having determined the relevance of Plaintiffs' damage-statements and identified the

appropriate valuation method for the injunction sought, the Court will now examine United's costs

in complying with such injunction.

First, in Plaintiffs' own words, their "primary objective" in this case is to obtain injunctive

relief to prevent United from cancelling tickets purchased for future flights by or on behalf of any

Plaintiff based upon false, erroneous, or pretextual reasons, and to preclude United from executing any such ticket cancellations without first inquiring with the booking agent, cardholder, and issuing financial institutions. Notably, Plaintiffs also seek to preclude United from canceling *any* tickets without notifying the booking agent, cardholder and passenger involved, irrespective of whether the ticket was cancelled due to suspected fraud or some other reason. Thus, the relevant cost of compliance is not merely the cost to United in changing its operations to accommodate Plaintiffs in this case. Rather, Plaintiffs' request, if granted, would also require United to alter its operations to prevent any prospective customer from experiencing harm similar to that alleged by Plaintiffs.

Given the size of United and its worldwide scope of operations, it is "more likely than not" that requiring United to notify the booking agent, cardholder, and passenger, before canceling *any* ticket would constitute a significant undertaking, resulting in compliance costs exceeding $75,000. In that regard, United notes that the proposed injunction would require it to:

      a) overhaul its entire credit card and fraud protection system, and require it to process all potentially fraudulent transactions when the customer could not be reached to verify the purchase;

      b) revise its computer system so as to not cancel suspected fraudulent transactions when United is unable to reach the cardholder;

      c) retrain all personnel involved in its credit card and fraud protection department in order to comply with the new policy; and

      d) process potentially fraudulent transactions, thereby exposing United to liability from individuals, and the financial institutions which serve them, whose credit cards are charged through fraud.

In support of the above claims, United offers Mannette's Declaration, stating that the changes sought by Plaintiffs would require United to significantly alter its operations in such a manner as to exceed $75,000.

Because Plaintiffs' aggregate monetary damages total $53,360.06, the value of the injunctive relief need only exceed $21,639.94 for the jurisdictional amount to be reached.  The Court concludes that it is more likely than not that a multinational corporation as large as United—having more than 86,000 employees,[1] operating approximately 3,350 flights per day, transporting 65 million passengers a year,[2] incurring operating expenses in excess of $22 billion[3]—would incur additional costs of at least $21,639.94 by complying with the injunction.   Looking at it another way, it is not unreasonable to further conclude that United would hire at least *one* additional employee to, in some manner, address ticket fraud/cancellation with respect to its nearly 178,000 daily passengers.  The cost of hiring this one employee would alone satisfy the remaining $21,639.95 required to reach the jurisdictional amount.

Therefore, the Court finds that United has reached its burden of showing that the amount-in-controversy "more likely than not" exceeds $75,000 in this case.

## V. CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Plaintiffs' Motion to Remand [dkt 9] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to Conduct Discovery Limited to the Issue of the Amount in Controversy [dkt 10] is DENIED as moot.

IT IS SO ORDERED.

                                                    s/Lawrence P. Zatkoff
Date:   February 1, 2012                            U.S. DISTRICT JUDGE

---

1       UNITED AIRLINES, http://ir.united.com/phoenix.zhtml?c=83680&p=irol-homeprofile (last visited January 20, 2012).
2       United Airlines, *2010 Annual Report* 4 (2011), *available at* http://ir.united.com/phoenix.zhtml?c=83680&p=irol-reportsannual.
3       *Id*. at 37.