UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH JARRETT-COOPER and EXCLUSIVE
EVENTS & ACCOMODATIONS, L.L.C.,

       Plaintiffs,

                                             Case No. 11-13674

v.                                         Hon. Lawrence P. Zatkoff

UNITED AIR LINES, INC.,

       Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on November 20, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on the following motions:

(1) Defendant's motion for summary judgment [dkt 116];
(2) Plaintiffs' motion for partial summary judgment [dkt 113];
(3) Plaintiffs' motions seeking to file an amended complaint [dkt 120, 141];
(4) Plaintiffs' motion seeking leave to file a reply brief after the allotted time [dkt 124]; and
(5) Plaintiffs' motion for relief of order concerning remand of the case [dkt 110].

All motions except Plaintiffs' motion to file a reply brief after the allotted time have been fully briefed.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted.  For the following reasons, Defendant's motion for summary judgment and Plaintiffs' motion seeking leave to file a reply brief after the allotted time are GRANTED and Plaintiffs' remaining motions are DENIED.

## II.  BACKGROUND

**A.  FACTUAL BACKGROUND**

The facts of this case are well-established in the Court's prior Orders.  Plaintiff Exclusive Events & Accommodations, LLC ("Exclusive") is an entertainment tour support service that arranges travel accommodations for its various clients.  Exclusive is owned and operated by Plaintiff Ruth Jarrett-Cooper ("Jarrett-Cooper").

Plaintiffs claim that, in June of 2011, Plaintiffs purchased airline tickets—using Jarrett-Cooper's credit card—from Defendant United Air Lines ("Defendant") on behalf of a client (the "June Transaction").  Plaintiffs assert that, although they received e-mail confirmation of the purchase from Defendant, the tickets were later cancelled by Defendant—without notifying Plaintiffs or their clients—for suspected credit card fraud.  Plaintiffs claim this caused their clients to miss flights and caused Plaintiffs significant economical and reputational harm.

Plaintiffs assert a similar incident occurred in August of 2011 (the "August Transaction").  Plaintiffs claim tickets purchased for a different client—this time using the client's credit card—were once again cancelled at a later date by Defendant due to suspected credit card fraud.  Plaintiffs advance they once again were not notified of this cancellation, and but for a last-minute change in their client's travel arrangements, Plaintiffs' clients would have been forced to miss flights.

Plaintiffs claim these cancellations were the result of Defendant improperly flagging Plaintiffs' e-mail address—"ibookhotels@gmail.com"—as fraudulent in connection with Plaintiffs' purchasing activity in May of 2010 (the "May Transaction").  Plaintiffs allege that Defendant's computerized fraud detection system improperly flagged Plaintiffs' May Transaction as containing a suspicious e-mail address.  This resulted in an investigation where Defendant found "confirmed fraud" related to Plaintiffs' e-mail address, a finding which

2

Plaintiffs contend served as the basis for Defendant's improper cancellations in the June and August Transactions.

The instant matter concerns these two transactions and the alleged fallout.

## B. PROCEDURAL BACKGROUND

Plaintiffs[1] filed suit in Oakland County Circuit Court claiming damages as a result of Defendant's alleged improper, unilateral, and undisclosed cancellation of the tickets booked in the June and August Transactions. Defendant timely removed the case to this Court.

Plaintiffs vigorously disputed the removal and the Court's jurisdiction over this case. On September 1, 2011, Plaintiffs' filed a motion to remand, which the Court denied. Plaintiffs' then filed contemporaneous motions for reconsideration and for relief from judgment on February 9, 2012, both of which regarded Plaintiffs' denied motion to remand. The Court denied Plaintiffs' motions for reconsideration and relief from judgment.

Plaintiffs then filed a motion on March 15, 2012, seeking to voluntarily dismiss this case so as to pursue separate actions in state court. The Court denied the motion. On April 25, 2012, Plaintiffs filed a motion seeking the Court's reconsideration of its order denying voluntary dismissal. The Court denied the motion. Finally, Plaintiffs appealed to the Sixth Circuit Court of Appeals, requesting that the Court of Appeals issue a writ of mandamus requiring this Court to remand this case to state court, or grant Plaintiffs' motion for voluntary dismissal under Fed. R. Civ. P. 41. The Sixth Circuit denied Plaintiffs' request.[2]

Plaintiffs filed their complaint on August 18, 2011, alleging that Defendant is liable for

---

[1] The original complaint included three other plaintiffs that have since been removed from the case due to their failure to prosecute [dkt 81].

[2] Plaintiffs' pending motion regarding this Court's jurisdiction [dkt 110] once again challenges the Court's February 1, 2012, Order [dkt 25] denying Plaintiff's motion to remand [dkt 18]. The Court finds that the arguments in Plaintiffs' current motion are materially indistinguishable from Plaintiffs' previous motion for reconsideration. As such, the Court finds it has already ruled on this matter and thus denies Plaintiffs' motion.

breach of express and implied contracts (Count I); breach of express and implied warranties (Count II); conversion (Count III); arbitrary, capricious and unlawfully discriminatory practices (Count IV); intentional infliction of emotional distress (Count V); interference with contractual relationships (Count VI); interference with contractual opportunities (Count VII); interference with business relationships or opportunities (Count VIII); and negligent infliction of emotional distress (Count IX). Plaintiffs also requested permanent injunctive relief.

Plaintiffs have since filed two motions with the Court seeking amendment of their initial complaint. Filed on July 22, 2013—nearly two years after the commencement of this case—Plaintiffs seek to levy five additional claims against Defendant: defamation; wrongful disparagement of Plaintiffs' business integrity and honesty; false light; false imputations of criminal conduct; and false imputation of conduct bearing on Plaintiffs' integrity.

In their response to Defendant's motion for summary judgment, Plaintiffs voluntarily dismiss Counts II, III, IV and IX of their complaint. The parties have filed the instant cross motions for summary judgment on Counts VI-VIII. Defendant also seeks summary judgment against Plaintiffs for Counts I, V, and Plaintiffs' request for permanent injunctive relief.

### III. LEGAL STANDARD

#### A. SUMMARY JUDGMENT

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*,

4

477 U.S. 317, 323 (1986).  The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).  "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## B.  LEAVE TO AMEND

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend shall be "freely give[n] . . . when justice so requires," but "that window of opportunity does not remain open forever."  *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008).  "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."  *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (*citing Ford v. Ford*, 371 U.S. 187 (1962)).  When a party seeks to amend its complaint at a late stage of the litigation, "there is an increased burden to show justification for failing to move earlier."  *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452,

5

459 (6th Cir. 2001) (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).

## IV. ANALYSIS

Defendant asserts Plaintiffs' claims for breach of contract, tortious interference, intentional infliction of emotional distress and permanent injunctive relief lack the requisite evidence needed to raise a genuine issue of material fact, and thus must be dismissed. Plaintiffs argue that there is no genuine issue of material fact as to their tortious interference claims, insisting they should be granted. Plaintiffs further assert they have presented enough evidence as to their remaining claims to warrant denying Defendant's motion. Finally, Plaintiffs seek to amend their original complaint to include five additional claims against Defendant.

For the following reasons, the Court finds Plaintiffs have failed to raise genuine issues of material fact as to all counts of their complaint. Further, the Court denies Plaintiffs' request to amend its complaint and Plaintiffs' request for permanent injunctive relief.

### A. PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs seek to amend their complaint—nearly two years after the original complaint was filed—to include five additional claims against Defendants: defamation; wrongful disparagement of Plaintiffs' business integrity and honesty; false light; false imputations of criminal conduct; and false imputation of conduct bearing on Plaintiffs' integrity. Plaintiffs' argue the underlying facts to these claims were only recently unearthed through "persistence in discovery," and that Plaintiffs would be substantially prejudiced if they were not allowed to amend their complaint to reflect these facts. The Court is not convinced.

The Court finds that the addition of Plaintiffs' proposed claims would not only unduly prejudice Defendant, but would also be futile. Plaintiffs have failed to adequately explain why it has taken nearly two years to file these additional claims. Although Plaintiffs assert new

6

evidence was uncovered, it appears to the Court that Plaintiffs' additional claims rely on facts—Defendant's alleged statement to Plaintiffs' clients in cancelling the June and August Transactions—that have always been available.  Additionally, Plaintiffs have previously failed to abide by the Court's discovery timelines, resulting in more action from Defendant and forcing the Court to issue sanctions.  The Court thus finds that allowing for additional discovery with regards to these new claims would extremely prejudice the Defendant.

Finally, the Court finds that all five counts are barred by the applicable statute of limitations.  All five of Plaintiffs' additional charges are reiterations of the same defamation claim.[3] In Michigan, a claim for defamation has a one-year statute of limitations.  *See* Mich. Comp. Laws § 600.5805(9).  As Plaintiffs attempt to raise these additional claims well outside the one-year limit imposed by Michigan law, their inclusion would be futile.

As such, the Court denies Plaintiffs' motions to amend their complaint.

## B.  BREACH OF CONTRACT CLAIMS (COUNT I)

Defendant asserts Plaintiffs' claims of breach of express and implied contract fail to raise a genuine issue of material fact, and thus should be dismissed.  Although Plaintiffs' complaint does not specify upon what grounds these claims rest, the Court garners from Plaintiffs' assorted filings that they believe Defendant has breached either an express or implied contract it had with Plaintiffs.  The Court will address each count in turn.

### I. Breach of Express Contract

Defendant claims that: 1) no express contract between it and Plaintiffs exist arising from the June and August Transactions; 2) if an express contract does exist, the Plaintiffs are not parties to it; and 3) even if Plaintiffs are found to be parties to an alleged express contract arising

---

[3] If Plaintiffs were relying upon some unspecified facts that differentiate their five additional charges, it was lost on the Court.  The Court will not speculate as to what facts Plaintiffs believe warrant recognition of each claim.

from the June or August transaction, their failure to abide by the terms of the contract makes their breach of express contract claim fail.  In response, Plaintiffs assert that express contracts between them and Defendant indeed exist, that they are parties to these contracts, and that Defendant breached these contracts by improperly cancelling each transaction.

While the Court finds that the disputed transactions do constitute express contracts, the Court finds that Plaintiffs claim for breach of express contract fails.  Plaintiffs' argument that they have standing to sue with regards to the August Transaction—a purchase of airline tickets from Defendant made with a client's credit card—is unconvincing.  Plaintiffs' provide no legal support for such an agency theory of contract liability and the Court refuses to recognize such liability now.

As for the June Transaction, the Court finds that Plaintiffs did enter into an express contract with Defendant.  Although Defendant claims Plaintiffs merely accessed Defendant's website as third-party commercial service providers, it appears undisputed that Plaintiff Jarrett-Cooper purchased the tickets in the June Transaction with her own credit card.  Thus, the Court finds the June Transaction represents an express contract entered into between Plaintiffs and Defendant.

Defendant argues that the terms of any express contract between Plaintiffs and itself are governed by Defendant's Contract of Carriage.[4]  This Contract of Carriage, Defendant's assert, demonstrates that Plaintiffs cannot possibly be parties to any contract arising out of the June Transaction, and thus have no standing to bring suit.  Defendant contends this is because the Contract of Carriage deals only with contracts between Defendant and passengers. As Plaintiffs only purchased the tickets in the June Transaction—and were thus not passengers—Defendant

---

[4] Defendant's Contract of Carriage sets out the basic terms and conditions that apply to the transportation of passengers and baggage on Defendant's flights.  Defendant asserts that passengers agree to be bound by this Contract of Carriage by purchasing tickets or by accepting transportation.

argues Plaintiffs have no standing to sue.

The Court disagrees. Defendant's argument does not prove that Plaintiffs have no standing to sue. Defendant's argument illustrates to the Court simply that the Contract of Carriage does not apply to the express contract arising from the June Transaction. As such, the Court finds that Plaintiffs are parties to the contract that arose as a result of the June Transaction.

Finally, the Court is not swayed by Defendant's argument that the terms of the Contract of Carriage bars Plaintiff from now filing suit. Notwithstanding the Court's previous finding that the Contract of Carriage does not apply to the June Transaction, the portion of the Contract of Carriage upon which Defendant relies—titled "Personal Injury And Death"—clearly does not apply to the sort of contract dispute currently before the Court. Second, this section of the Contract of Carriage states that a passenger must provide Defendant with notice of any claim within 90 days. As Plaintiffs are not passengers, this is further evidence that this provision does not apply. Lastly, even if this provision were to apply, the Court cannot see how Plaintiffs' filing of the instant action—which occurred within 90 days of the disputed contracts—does not satisfy the "notice of the alleged occurrence of events resulting in the claim" requirement in the Contract of Carriage that Defendant's assert bars Plaintiffs from now filing suit.

Despite finding the existence of an express contract arising from the June Transaction that is not governed by the Contract of Carriage, the Court nonetheless finds that Plaintiffs have failed to prove that Defendant's alleged breach resulted in any injury. Defendant asserts—and Plaintiffs agree—that the money Plaintiffs spent on the tickets in the June Transaction has been completely refunded. Furthermore, Plaintiffs' complaint is void of any damages resulting from this alleged contractual breach. Indeed, it is completely unclear to the Court as to whether the general damages Plaintiffs assert they suffered were in any way related to Defendant's alleged

breach of contract. As Plaintiffs have had ample time to supply the Court with any specific damages that may have resulted from Defendant's alleged breach, the Court refuses to speculate as to what damages—if any—such a breach caused Plaintiffs.

As such, the Court finds that Defendant must be granted summary judgment with respect to Plaintiffs' breach of express contract claim.

### II. Breach of Implied Contract

Having already determined that the June Transaction and the August Transaction created express contracts, the Court finds Plaintiffs' breach of an implied contract claim must fail.

As such, the Court finds that Defendant must be granted summary judgment with respect to Plaintiffs' breach of implied contract claim.

### B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM (COUNT V)

Defendant contends that Plaintiff Jarrett-Cooper's claim[5] for intentional infliction of emotional distress ("IIED") fails to provide evidence of the sort of extreme and outrageous acts required to sustain such a cause of action. Plaintiff Jarrett-Cooper asserts that Defendant's actions do rise to the level of intentional infliction of emotional distress, claiming Plaintiff Jarrett-Cooper suffered extreme embarrassment, frustration, and severe distress from Defendant's actions.

Michigan does not recognize a claim for IIED where the conduct complained of relates to duties imposed under an existing contract. *See Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 83 (1997) (citing *Hart v. Ludwig*, 347 Mich. 559, 563 (1956)) ("As a general rule, there must be some active negligence or misfeasance to support a tort. There must be some breach of duty distinct from breach of contract."). As established by the Michigan Supreme

---

[5] The Court recognizes that this claim is by necessity brought only by Plaintiff Jarrett-Cooper, as limited liability companies do not have standing to bring a claim of this nature.

Court: "If a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the action will lie, otherwise not." *Hart*, 347 Mich. at 565 (citations omitted).

All of Plaintiff's alleged harms—embarrassment, frustration, and severe distress—arise as a direct result of Defendant's purported breach of the contracts arising from the June and August Transactions. Plaintiff Jarrett-Cooper fails to offer any factual content evidencing that these alleged harms are the result of Defendant violating a duty separate from those within the underlying transactions. Plaintiff Jarrett-Cooper, therefore, has shown no legal duty separate from the contract itself, and thus her IIED claim cannot survive.[6]

As such, the Court finds that Defendant must be granted summary judgment with respect to Plaintiff's IIED claim.

## C. INTENTIONAL INTERFERENCE CLAIMS (COUNT VI-VIII)

Defendant argues that Plaintiffs' claims involving intentional interference with contractual and business relations should be dismissed. Defendant asserts it had no knowledge of the business relationships, expectancy of business, or business contracts or contractual relations that Plaintiffs claim were impacted by the cancellation of Plaintiffs' tickets. Defendant also claims Plaintiffs have failed to prove Defendant did anything to intentionally interfere with Plaintiffs' business or contracts. Lacking evidence of any knowledge or intent, Defendant advances Plaintiffs' intentional interference claims must fail.

Plaintiffs assert the requirements for maintaining claims of tortious interference with a business expectancy and relationship have been met, alleging there is no genuine issue of material fact that their claims should be granted. Plaintiffs' argue[7] that Defendant did have the

---

[6] Even if Michigan law did recognize such a claim, the Court finds that Plaintiff has not presented any evidence that Defendant's actions qualify as the sort of extreme and outrageous conduct required to support an IIED claim.

[7] The Court notes that none of these arguments are contained in Plaintiffs' complaint. Rather, the arguments addressed by the Court are a summary of the disorganized contentions advanced by Plaintiffs in various filings.

requisite knowledge, and that the intent element of these intentional interference claims is satisfied by Defendant's wrongful *per se* imputations.

Under Michigan law, tortious interference with a contract or contractual relations is a distinct cause of action from tortious interference with a business relationship or expectancy. *See Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 89 (2005) (citations omitted).   As such, the Court will address Plaintiffs' three claims separately as two distinct causes of action.

### I. Tortious Interference with a Contract or Contractual Relations

Under Michigan law, "[t]he elements of the tort of interference with an existing contractual relation are: (1) the existence of a contract; (2) a breach of the contract; and (3) instigation of the breach by the alleged tortfeasor without justification." *Woody v. Tamer*, 158 Mich. App. 764, 773–74 (1987).   In order to sustain a claim of tortious interference with a contract or contractual relations, Michigan law requires plaintiff prove that a defendant had knowledge of the underlying contract.   *See Peter Vill & Assoc., Inc. v. Michigan Dep't of Natural Res.*, 93 Mich. App. 724, 732 (1979).

Defendant's argument in favor of dismissing Plaintiffs' claim of tortious interference with a contract or contractual relationship is completely ignored by Plaintiffs.   Plaintiffs make no reference to this claim in either their own motion for summary judgment or their response to Defendant's motion.   As Defendant has met its burden of production, Plaintiffs are under a duty to prove that their claim raises at least some doubts concerning a material fact.   *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586.   Further, this duty cannot be met simply by relying on Plaintiffs' complaint.   *See Celotex Corp*, 477 U.S. at 324 ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and . . . designate 'specific facts showing that there

is a genuine issue for trial.'").

The Court finds that Plaintiffs have failed to meet their burden with regards to their claim of tortious interference with a contract or contractual relationship. As such, the Court finds that Defendant must be granted summary judgment with respect to this claim.

**II. Tortious Interference with a Business Relationship or Expectancy**

In order to succeed on a claim of tortious interference with a business relationship or expectancy, a plaintiff must show: "(1) existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer;[8] (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *N. Plumbing & Heating, Inc. v. Henderson Bros., Inc..* 83 Mich. App. 84 (1978). "One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another." *Id.* (quotations and citation omitted).

Relying on standards completely different than those established by Michigan case law, Plaintiffs argue that a viable tortious interference with business relationships or expectancy claim only requires proof that a defendant's conduct interfered with the plaintiff's business expectancy and that this interference was improper or unjustified. As Defendant points out, this analysis is void of several critical factors a plaintiff in Michigan must prove.

First, while Plaintiffs allege Defendant's actions resulted in the loss or limitation of

---

[8] The Court is aware of Michigan case law that indicates knowledge is not required for a claim of tortious interference with a business relationship. *See Peter Vill & Assoc., Inc.*, 93 Mich. App. at 732. Neither party has addressed this potential conflict, however, with both operating as if knowledge is required. Although no case speaks of this potential conflict, the majority of Michigan case law seems to indicate knowledge is required for such a claim. As such, the Court will follow the majority position and require knowledge as an element of the claim.

business with "established clients," Plaintiffs have not indicated that Defendant had any knowledge of Plaintiffs' relationship with these clients.  Plaintiffs assert that Defendant knew "the nature of the Plaintiffs' business and the services it provided."  This standard, however, would impermissibly broaden the knowledge required for maintaining such a claim.  Michigan case law clearly indicates that a plaintiff must prove specific knowledge of *the* business relationship allegedly disrupted—not just general knowledge of *any potential* business relationship—to succeed in a tortious interference of business relationships or expectancy claim.

Additionally, the Court finds that Plaintiffs have offered no evidence that Defendant "induced" or "prevented" any third parties from continuing or starting a business relationship with Plaintiffs.[9]  Plaintiffs attempt to avoid this intent requirement by arguing that Defendant's alleged statements concerning the "suspected credit card fraud" in the June and August Transactions are defamatory, are thus wrongful *per se*, and should consequently satisfy the intent requirement of a tortious interference with business relationships or expectancy claim.  Even if the Court were to accept Plaintiffs' misguided attempt to impute Defendant's actions as intentional, the Court nevertheless finds that Plaintiffs fail to satisfy the very test they seek to employ.  Plaintiffs assert false and malicious statements are actionable *per se*, yet fail to provide any evidence that Defendant's alleged statements were malicious in any way.  The often miss-cited Michigan case law Plaintiffs rely upon in advancing such a contention fails to provide any support for Plaintiffs' argument.

As such, the Court finds that Defendant must be granted summary judgment with respect to Plaintiffs' tortious interference with business relationships or expectancy claim.

### D.  PERMANENT INJUNCTIVE RELIEF

---

[9] Indeed, it appears to the Court it would be in Defendant's best interest not to interfere with Plaintiffs' business expectations, as such an interference would seemingly result in lost business for Defendant as well.

Plaintiffs seek permanent injunctive relief against Defendant.  Although the confines of Plaintiffs' request for injunctive relief were not previously specified,[10] Plaintiffs' response to Defendant's instant motion clarifies the three actions Plaintiffs seek:

(1) removal of the "confirmed" fraud designation Defendant flagged Plaintiffs' May 2010 Transaction with;
(2) removal of Plaintiffs' "ibookhotels@gmail.com" e-mail address from Defendant's "negative" fraud database; and
(3) notifying Plaintiff of any future suspected credit card fraud at the time of Defendant's determination to cancel tickets.

Defendant contends granting such injunctive relief is preempted by the federal Airline Deregulation Act of 1978, 49 U.S.C. § 41713.  Additionally, Defendant contends that Plaintiffs' request for permanent injunctive relief should fail because Plaintiffs have not produced enough evidence showing they are entitled to such relief.

The Supreme Court has recognized four "well-established principles of equity" that plaintiffs seeking a permanent injunction must satisfy:

(1) that plaintiffs have suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the hardships between the plaintiffs and defendants, a remedy in equity is warranted; and
(4) the public interest would not be disserved by a permanent injunction.

*See eBay Inc. v.  MercExchange, L.L.C.*, 547 U.S. 388 (2006).  The standard for granting a permanent injunction is "essentially the same" as that for granting a preliminary injunction, except that the party requesting permanent injunctive relief must demonstrate actual success on the merits, rather than a mere likelihood of success.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987).

Finally, although a court must consider all four factors when making its determination, it

---

[10] The Court did previously indicate that Plaintiffs' requests to prevent Defendant from cancelling any tickets without notifying all parties involved were broad and significant [dkt 18].

is within the discretion of the court to deny injunctive relief based on a plaintiff's failure to satisfy any one of these factors. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997); *Hacker v. Federal BOP*, No. 06-12425-BC, 2006 WL 2559792, at *8 (E.D. Mich. Sept. 1, 2006) (finding that the plaintiff's inability to show irreparable harm, by itself, justified denial of a preliminary injunction).

The Court finds that Plaintiffs have failed to satisfy the four-factor test required for granting permanent injunctive relief. Although Plaintiffs argue they have "suffered considerable harm" through Defendant's allegedly improper flagging of Plaintiffs' e-mail address, the Court is not convinced. Indeed, Plaintiffs have indicated they have successfully dealt with Defendant simply by using a different e-mail address. The Court finds Plaintiffs' inability to use "ibookhotels@gmail.com" as their preferred e-mail address does not rise to the level of irreparable harm required for a grant of permanent injunctive relief.

Further, the Court finds that Plaintiffs have failed to show that their request for notification from Defendant prior to any future cancellations is warranted. As the Court has already established, Plaintiffs' complaint fails to raise a genuine issue of material fact with regards to any of their claims. Thus, Plaintiffs have not submitted any evidence to support an order from this Court compelling Defendant to make substantial changes to their ticketing policies. *See Chapman v. Bouchard*, No. 09-15039 WL 2163805, at *1 (E.D. Mich, May 26, 2010) (citing *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) ("[F]or a permanent injunction to issue the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other aspects.")).

As the Court finds Plaintiffs' requests for permanent injunctive relief lacks merit, it will not address Defendant's preemption argument.

16

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment [dkt 116] and Plaintiff's motion for leave to file a reply brief after the allotted time [dkt 124] are GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' partial motion for summary judgment [dkt 113], motions to amend their complaint [dkt 120, 141], and motion for relief from order [dkt 110] are DENIED.

IT IS SO ORDERED.

<div style="margin-left:40%">

S/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT

</div>

Dated: November 20, 2013